IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA <u>ex rel.</u> | * | |
| | * | Civil Action No. |
| TEKARY WRIGHT, | * | |
| Plaintiff-Relator | * | **CIVIL FALSE CLAIMS ACT** |
| v. | | **COMPLAINT FILED UNDER** |
| | * | **SEAL PURSUANT TO** |
| | | **31 U.S.C. § 3729, <u>et</u> <u>seq</u>** |
| | * | |
| | * | |
| SHIRE PHARMACEUTICALS GROUP, INC. d/b/a SHIRE PHARMECEUTICALS, | * | **DO NOT PLACE IN PRESS BOX. DO NOT ENTER IN PACER.** |
| Defendant. | | |
| | * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Plaintiff-Relator, Tekary Wright (hereinafter "Relator"), by and through her undersigned counsel, hereby brings this qui tam action in the name of the United States of America against Shire Pharmaceuticals (hereinafter: "Defendant").

1. This is an action to recover damages and civil penalties arising from false statements and claims made or presented by the Defendants and/or their agents and employees in violation of the False Claims Act, 31 U.S.C. § 3729 <u>et.</u> <u>seq.</u>

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 31 U.S.C. § 3732 because this action arises under the laws of the United States.

3. Venue is proper in the District of Maryland because Defendant resided, transacted business, and can be found in this judicial district.

4.	This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a).

## PARTIES AND BACKGROUND

5.	Defendant is a pharmaceutical manufacturer that, among other things, manufactures and distributes Lanthanum Carbonate under the brand name Fosrenol®.

6.	Lanthanum Carbonate helps prevent hyperphosphatemia in patients with end stage renal disease, and is sold by Defendant to patients who are beneficiaries of the federally funded End Stage Renal Disease Program ("ESRD Program").

7.	Plaintiff-Relator was a laboratory technician in Defendant's quality control section. Her job duties included performing laboratory tests of Defendant's drugs, including a quality control test referred to as a "dissolution test," which analyzes the ability of a drug to dissolve in the human blood stream.

8.	As outlined below, although batches of drugs failed dissolution tests, and Defendant concealed these failures through false laboratory reports and allowed the drugs to enter the stream of commerce.

9.	Plaintiff-Relator is the "original source" of the information contained in the complaint within the meaning of 31 U.S.C. § 3730(e) (4) (B), and has personal knowledge of the false records and statements presented to the United States by and/or on behalf of the Defendants.

## STATUTORY BACKGROUND: MEDICARE AND MEDICAID PROGRAMS

10.	Medicaid is a health insurance program established for the poor by Title XIX of the Social Security Act and is administered by the states, 42 U.S.C. § 1396 et seq.

11.	The United States Government provides reimbursement to the states for a percentage of the health care expenses paid under the Medicaid program.

12.	Defendants also received payment from the Medicare program.

13.	Medicare was established by Title 18 of the Social Security Act, 42 U.S.C. § 1395 *et seq.* and covers medical expenses for elderly and disabled individuals.  A component of the Medicare program is the Medicare End Stage Renal Disease Program (hereinafter "Medicare ESRD"), which provides federal reimbursement for patients with end stage renal disease.

14.	The majority of Defendants' Fosrenol customers are elderly or disabled individuals with end stage renal disease, and the cost of Defendant's drug Fosrenol was, and is, reimbursed by the Medicare and Medicaid programs.

## FACTS COMMON TO ALL COUNTS

15.	Defendant's drug Fosrenol® comes in 500, 750, and 1000 milligram chewable tablets.

16.	To maintain compliance with Federal law, Defendant must perform quality control tests that, among other things, verify the safety and efficacy of the drug.

17.	One such quality control test is a dissolution test.  This test was developed in order to assess the drug release characteristics of Fosrenol® tablet formulations. Dissolution testing is important because it tests whether or not a drug will dissolve after the user ingests it.

18.	Under the protocols established by defendant and approved by the Food and Drug Administration ("FDA"), Defendant tested Fosrenol's® dissolution properties using protocols established by United States Pharmacopoeia-National Formulary Chapter <711> or "USP/NF <711>."

19.	 The USP/NF <711> protocol is designed to replicate the chemical characteristics of the human digestive system by analyzing the percentage of medicine

3

that dissolves during a set period of time.

20. Under the USP/NF <711> protocol, Defendant used a computerized machine known as a "UPS Apparatus 3." This machine has reciprocating cylinders and polypropylene mesh screen, and it essentially dips, swirls, or agitates the medicine in a solution known as a "dissolution medium."

21. Under the dissolution testing protocol, a technician was required to set the USP apparatus at ten dips per minute. The product was then dipped in the dissolution medium at a speed of ten dips per minute for a total time period of 30 minutes.

22. After 30 minutes, the laboratory technician analyzed the percentage of drug release by determining the lanthanum carbonate content in the dissolution medium. If the dissolution medium contained less than 80% lanthanum carbonate after 30 minutes, the drug failed the dissolution test.

23. Under the dissolution testing protocols identified above, failure required the manufacturer to initiate additional tests known as "Level 2" and "Level 3" tests.

24. If the drug failed Level 2 and Level 3 tests, the drug batch must be recalled.

25. On at least four separate occasions, batches of Fosrenol® failed the Level 1 dissolution test. Specifically, this happened on October 3, 2008, October 7, 2008, October 10, 2008, and October 22, 2008.

26. Relator reported the results to her supervisors.

27. Despite the failures, Shire, through its agents, representatives, and employees, refused to perform proper Level 2 or Level 3 testing. Instead, they allowed the drugs to enter the stream of commerce and be sold to patients.

28. On at least three additional occasions, batches of drugs failed the Level 1

dissolution tests. Rather than performing Level 2 tests as mandated by the USP/NF <711> protocol, Shire, through its agents and employees, improperly modified the testing protocols in order to make it appear that the drug passed the Level 1 dissolution test. Specifically, on October 7, 2007, October 10, 2008, and October 22 2008, Shire, through its agent Wei Hung, changed to testing protocol from 10 dips per minute to 30 dips per minute.

29. The change in the testing protocol was not approved by the FDA, nor was it part of the testing protocol. Changing the dip speed, however, ensured that the drug passed the dissolution test, since the drug spent more time in the dissolution medium.

30. On October 3, 2008, Plaintiff reported the results of her October 3 test to her supervisor, Akhil Dalwadi, Shire, through its agent and employee, Mr. Dalwadi, attempted to intimidate Relator into falsifying her test results in order to make it appear that the drugs passed the dissolution tests. Specifically, Mr. Dalwadi instructed Plaintiff to file a note in the testing notebooks falsely representing that the drug failed the dissolution test because Plaintiff failed to follow the proper testing procedure. Plaintiff refused.

31. As discussed above, two other batches of Fosrenol failed the dissolution tests on October 7 and October 10, 2008. On both of those days, Shire's agent, Mr. Dalwadi requested that Relator falsely represent that the failure resulted from her failure to follow proper testing protocols. Because this was not true, Relator refused to make false statements regarding the testing procedures.

32. On October 10, 2008, Shire, through its agent or employee, Amy Tu, Shire's manager of chemistry quality control, requested that Relator create false records stating that the October 3, 7, and 10th failures occurred because Plaintiff failed to follow

5

the proper testing protocols.  Once again Plaintiff refused to falsify the testing results

33.     After plaintiff refused to falsify her testing results, Shire's management engaged in a systematic attempt to harass and intimidate Plaintiff in order to force her to falsify the testing results.  Specifically, Shire's manager Amy Tu issued Relator a "Written Warning" on October 10, 2008, accusing her of "insubordination" and unprofessional behavior.  The October 10, 2008 letter was pretextual and harassing since the only instructions Relator failed to follow was the instructions to falsify the results of the October 3, 7, and 10, 2008 Fosrenol dissolution tests.

34.     On October 22, 2008, Relator tested another batch of Fosrenol, and it failed the dissolution tests.  That same day, Relator reported the failure to her supervisor Amy Tu.  Once again, Ms. Tu instructed Plaintiff to falsify her results by stating that the drug's failure was because Plaintiff had failed to follow the proper testing protocols.  Once again Plaintiff refused to make a false document or statement regarding her testing results.

35.     Starting on October 23, 2008, Shire precluded Plaintiff from performing any further tests on Fosrenol.

36.     Sporadically from October 23, 2008 through November 5, 2008, Shire manager Amy Tu requested that Plaintiff again file false reports in the laboratory notebooks stating that Plaintiff had failed to follow proper testing protocols.  Again, plaintiff refused these requests.

37.     Subsequently, on November 5, 2008, Shire fired Plaintiff for "insubordination."  The reason for her firing was pretextual, since the only "insubordination" of Relator was her failure to falsify the results of the lab tests.

## COUNT ONE
## 31 U.S.C. § 3729 (a) (1))
## False Claims Act
## (Knowingly Presenting a False or Fraudulent Claim)

38. Plaintiff-Relator incorporates the preceding paragraphs of this Complaint as if fully restated herein

39. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to officers, employees, or agents of the United States Government false or fraudulent claims for payment or approval of drugs which they knew, or reasonably could be expected to have known, had failed FDA-mandated quality control tests.

40. Defendants knew, or reasonably could be expected to have known, that failure of the quality control tests required further testing before these drugs should have been released into the stream of commerce, yet they allowed these drugs to enter the stream of commerce, and Defendant received, payment for the drugs.

41. These claims for payment were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of said claims or acted in reckless disregard of whether said claims were true or false. These claims were, therefore, false or fraudulent claims submitted for payment or approval to the United States in violation of 31 U.S.C. Section 3729(a) (1).

42. Plaintiff, the United States of America, unaware of the foregoing circumstances and conduct of Defendants and in reliance on the accuracy of said false or fraudulent claims, made payments to Defendants, which resulted in the United States being damaged in an amount to be established at trial.

**COUNT TWO**
**(31 U.S.C. Sec. 3729 (a) (1))**
**False Claims Act**
**(Knowingly Making, Using or causing to be made or used a**
**False Record or Statement)**

43.     Plaintiff-Relator incorporates the preceding paragraphs of this Complaint as if fully restated herein.

44.     By virtue of the acts described above, Defendant made, used or caused to be made or used, false records and statements to get the false and fraudulent claims allowed and paid.

45.     Defendant had actual knowledge that drugs provided to Medicare, Medicaid and other beneficiaries of Government-funded programs had failed FDA-mandated quality control tests, yet Defendant falsely certified that the drugs had passed the FDA-mandated tests and allowed the drugs to enter into the stream of commerce so that Defendant could receive reimbursement for the drugs in violation of 31 U.S.C. Section 3729(a)(2).

46.     Plaintiff, the United States of America, unaware of the falsity of the records and/or statements made, used, or caused to be made or used by Defendants, and in reliance on the accuracy thereof, paid the false or fraudulent claims submitted to it.

47.     By reason of these actions, the United States has been damaged in an amount to be established at trial.

**COUNT THREE**
**31 U.S.C. § 3730(h)**
**(Discrimination and harassment Against Relator)**

48.     Plaintiff-Relator incorporates the preceding paragraphs as if fully set forth

herein.

49.     On several occasions, Plaintiff-Relator requested that Defendant correct and reimburse the Government for its illegal conduct described herein and to bring any failures, fraud, or overpayments to the attention of the proper officials.

50.     Defendant refused to do so.

51.     Following the denial of such requests, Plaintiff-Relator began to gather facts to disclose the fraud to the proper government officials.

52.     Because of the investigation and other activities in the furtherance of this suit, Defendant, acting through its agents and employees, harassed, intimidated, and discriminated against Plaintiff-Relator.

53.     This harassment and discrimination included terminating Plaintiff-Relator's employment.

54.     This harassment has undermined Plaintiff-Relator's credibility, and has resulted in significant financial loss and distress for Plaintiff-Relator.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Relator, on behalf of herself and the United States of America, demands judgment against Defendants as follows:

**Counts One and Two:**

(a) Treble the amount of damages sustained by the United States, in an amount to be established at trial, equal to the amount of false claims submitted by Defendants;

(b) A civil penalty of $10,000 for each false or fraudulent claim that Defendants made or caused to be made to the United States Government;

(c) All other necessary and proper relief, including the costs of this action. In addition, Plaintiff-Relator on behalf of herself further demands;

(d) That in the event that the United States of America proceeds with this action or otherwise settles these claims, the Court award to Plaintiff-Realtor, an amount of the proceeds of this action or settlement of these claims of not less than 15% and as much as 25% pursuant to 31 U.S.C. § 3730(d), together with an amount of reasonable expenses incurred by Plaintiff-Relator, reasonable attorneys' fees, and all costs and expenses incurred by the Plaintiff-Relator in bringing this action;

(e) That in the event that the United States of America does not proceed with this action, the Court award to Plaintiff-Relator, an amount of the proceeds of this action or settlement of claims of not less than 25% and as much as 30% pursuant to 31 U.S.C. § 3730(d), together with an amount of reasonable expenses incurred by Relator, reasonable attorneys' fees, and all costs and expenses incurred by the Plaintiff-Realtor in bringing this action;

(f) Such other and further relief that this court deems just and proper.

### Count Three:

(a) An award of at least double back-pay from November 5, 2008 to the present.

(b) Interest on any back pay award commencing as of November 5, 2008 through and including the date of payment.

(c) All special damages authorized under 31 U.S.C. § 3730(h), including reasonable attorneys' fees and all costs and expenses incurred by the Plaintiff-Relator in bringing this action.

(d) Such other and further relief that this court deems just and proper.

### Jury Demand

Pursuant to Fed. R. Civ. P. 38, Plaintiff-Relator demands trial by jury.

Dated: July 15, 2009                               Respectfully submitted,


/s/ W. Charles Bailey, Jr.
W. Charles Bailey, Jr. (#23580)
J. Stephen Simms (#4269)
SIMMS SHOWERS, LLP
20 South Charles Street
Suite 702
Baltimore, MD   21201
Phone:       410-783-5795
Facsimile:   410-783-1368

Relator's Counsel